D

STANDARD ACCEPTANCE CORPORATION *vs.* EDWIN T. CHAPIN.

Worcester.    September 23, 1931. — December 1, 1931.

Present: RUGG, C.J., CROSBY, WAIT, & SANDERSON, JJ.

*Bills and Notes*, Holder in due course. *Evidence*, Presumptions and burden of proof.

A corporation which specialized in financing the notes and conditional sales agreements of dealers in automobiles on June 11 received such an agreement from a dealer and discounted the note which accompanied it and which was signed by the brother of a salesman of the dealer. It previously had refused to finance an agreement and note signed by the salesman. In the previous year it had heard that the dealer had sold and delivered cars and later had obtained money from finance corporations on agreements and notes of the same cars executed by his salesmen, and, when it began to do business with the dealer, had warned him against indulging in that practice with it. Fifteen days before the transaction with the salesman's brother, it learned that the dealer had made sales in violation of mortgage agreements and two days after the transaction it had its first definite knowledge of his obtaining discount on notes and agreements of salesmen for cars previously sold and delivered to other purchasers. The agreement signed by the salesman's brother contained the statements: "The purchaser hereby acknowledges receipt of said motor vehicle"; and, in italics and heavy print just below the place for signature: "Purchaser sign here if motor vehicle is actually in your possession, but do not sign here unless you have actually received motor vehicle, since by doing so you might place yourself in position of being party to a fraud." There was no delivery of the automobile. It had been sold and delivered to another customer several months before June 11. When application was made by the dealer for discount, the corporation had inquired why the salesman's brother was buying another car when he already owned one and was told by the sales manager of the dealer, "of course, he is signing for his brother." The salesman represented to his brother, and the dealer's sales manager agreed with him in writing, that no liability on the note and agreement should attach to him. After bankruptcy of the dealer, the finance corporation brought an action on the note against its maker at the trial of which no contention was raised by the defendant that the plaintiff had actual knowledge of infirmity or defect in title of its indorser, the dealer, but it was contended that the plaintiff had knowledge of such facts that its action in taking the note amounted to bad faith. The judge ordered a verdict for the plaintiff. *Held*, that

(1) The evidence did not justify a finding of bad faith toward the defendant in the transaction;

(2) The verdict rightly was ordered.

CONTRACT upon a promissory note described in the opinion. Writ in the Central District Court of Worcester dated July 18, 1930.

On removal to the Superior Court, the action was tried before *Weed,* J. Material evidence is described in the opinion. The bill of exceptions states: "At the trial upon the evidence the only issue was as to whether or not the plaintiff was the holder in due course of the note in suit, and this issue was confined to whether or not it had notice or reasonable cause to know of any infirmity in the instrument or defect in the title of the payee when the note was negotiated to the plaintiff by the payee. The judge propounded the following question to the jury. 'Did the plaintiff at the time of the negotiation of the note in suit have knowledge of such facts that its action in taking the note amounted to bad faith?' The jury answered this question, 'Yes.'"

The judge received such answer of the jury and a general verdict for the defendant with leave reserved under G. L. c. 231, § 120, and later, upon motion by the plaintiff, ordered a verdict to be entered for the plaintiff in the sum of $1,242.60 and interest. The defendant alleged exceptions.

*L. E. Stockwell,* for the defendant.

*G. H. Mason,* (*J. A. Crotty* with him,) for the plaintiff.

WAIT, J. The plaintiff sues upon a promissory note dated June 11, 1930, made by the defendant payable to the order of The Maykel Automobile Company and indorsed without recourse by the payee to the plaintiff for value. At the trial the judge denied a motion to direct a verdict for the plaintiff; the jury found for the defendant, and answered "Yes" to the question: "Did the plaintiff at the time of the negotiation of the note in suit have knowledge of such facts that its action in taking the note amounted to bad faith?" Under leave reserved, pursuant to G. L. c. 231, § 120, the judge subsequently granted the plaintiff's motion to order a verdict for the plaintiff. The case is before us upon the defendant's exceptions to this ruling and order.

The only matter argued is whether there was evidence

sufficient to justify finding that the plaintiff had knowledge of such facts that its action in taking the note amounted to bad faith. No contention is made that it had actual knowledge of infirmity or defect in the title of its indorser; and it is not disputed that there was no error in the ruling and order if the plaintiff was a holder of the note in due course.

There was evidence as follows: The defendant, an architect, signed the note and an agreement of conditional sale with The Maykel Automobile Company to accommodate his brother who was a salesman for that company and who represented that he wished to purchase the automobile described in the agreement but could not buy in his own name because the seller refused to accept a salesman's note. The defendant had no intention of purchasing for himself or of taking delivery. He did not know that the note was to be discounted with the plaintiff. The brother represented, and the sales manager of The Maykel Automobile Company, in writing, agreed, that no liability on note and agreement should attach to the defendant. No delivery of the automobile was made. In fact the machine described in the agreement had been sold and delivered to another customer several months before June 11, 1930. The agreement signed by the defendant contained the statements: "The purchaser hereby acknowledges receipt of said motor vehicle"; and, in italics and heavy print just below the place for signature: "Purchaser sign here if motor vehicle is actually in your possession, but do not sign here unless you have actually received motor vehicle, since by doing so you might place yourself in position of being party to a fraud." The plaintiff, when note and agreement were delivered to it and when it paid the amount of the discount to The Maykel Automobile Company, did not know that no car had been delivered to the defendant. It did not check to see if cars were delivered in such transactions as such a practice "would be a physical impossibility."

The plaintiff specialized in financing the notes and "leases" of automobile dealers. It had an office in Worcester where The Maykel Automobile Company was a large dealer. Prior

to 1930 it had refused to finance notes and leases of the Maykel company because it had heard that other finance corporations had had troubles in dealings with it and that it had been irregular in its transactions. The plaintiff had heard, in 1929, that the Maykel company had sold and delivered cars and later had obtained money from finance corporations on leases of the same cars executed by its salesmen. In January, 1930, it began to do business with the Maykel company. Its treasurer told the assistant treasurer and general manager of the Maykel company: "I will forget what happened between you and the other finance companies if you go straight with me. That is all right, but if you don't you will find me a pretty tough fellow." From January to June, 1930, it discounted about forty-five conditional sale contracts and notes and up to June 13, 1930, found only one matter to be wrong, and that was explained. It refused to take leases and notes signed by salesmen. It had refused to finance a "lease" to be signed by the defendant's brother. Later when application was made for discount on a conditional sale to the defendant, the plaintiff had inquired why he was buying another car when he already owned one and was told by the sales manager of the Maykel company, "of course, he is signing for his brother."

On May 28 or 29 the plaintiff discovered that the Maykel company had made sales of cars in violation of mortgage agreements, and had the first definite knowledge of the company's failure to live up to its agreement. On June 13 it had its first definite knowledge of the company's obtaining discount on notes and agreements of salesmen for cars previously sold and delivered to other purchasers. This agreement and note were signed by the defendant on June 11, and, on the same day, the plaintiff discounted the note and received the agreement. On June 23 or 24 The Maykel Automobile Company was petitioned into bankruptcy.

The judge was right in ruling that this evidence does not justify a finding of bad faith toward the defendant in the transaction. *Russell* v. *Bond & Goodwin Inc.* 276 Mass. 458. See *Reynolds* v. *Park Trust Co.* 245 Mass. 440; *Paika* v. *Perry,* 225 Mass. 563; *Beacon Trust Co.* v. *Barry,*

260 Mass. 449. The note was perfect on its face. There was nothing to warn the plaintiff that the title of the payee was defective. If it were believed that the plaintiff had reason to suspect that the ostensible purchaser of the machine was not buying for himself, there nevertheless was nothing to show that he had been tricked or deceived into executing the papers. Knowledge that the maker is an accommodating party does not deprive an indorsee of his right as a holder in due course. G. L. c. 107, § 52. *Beacon Trust Co.* v. *Barry*, 260 Mass. 449, 452. Information that the would-be seller of a negotiable instrument is unscrupulous and has been concerned in shady or illegal transactions is not enough of itself to render the purchaser from him one who does not take in due course. *Estabrook* v. *Boyle*, 1 Allen, 412. *Setzer* v. *Deal*, 135 N. C. 428. As was pointed out in *Fillebrown* v. *Hayward*, 190 Mass. 472, 480, "neither knowledge of suspicious circumstances, nor doubts as to the genuineness of the title, nor gross negligence on the part of the taker either singly or together are sufficient to defeat the holder's recovery, unless amounting to proof of want of good faith." There is here a complete absence of any evidence to show participation in any scheme of deceit on the part of the plaintiff, or of any act on its part calculated to mislead the defendant, or of knowledge of any fact which should have led it to believe that the defendant had been defrauded by the holder or any prior party to the note. The only element even of suspicion of genuineness of the transaction resulting in the note — the participation of one who did not intend to be the real buyer of a motor vehicle — was deliberately connived at by the defendant. It gives no strength to his claim of bad faith in discounting the note. The plaintiff thus on the evidence was a holder in due course.

There was error in refusing, at the trial, to direct a verdict in its favor. The motion to enter a verdict for the plaintiff was granted properly under the leave reserved.

*Exceptions overruled.*
*Judgment for the plaintiff.*