## LINCOLN INVESTMENT CO. *v*. METROS.

1. BILLS AND NOTES—HOLDER IN DUE COURSE—FICTITIOUS NAMES. Failure of payee to conform with statute regulating carrying on of business under assumed or fictitious name does not prevent *bona fide* purchaser of such note in due course from recovering thereon (2 Comp. Laws 1929, §§ 9825–9829).

2. SAME—NOTICE OF INFIRMITY—ACTUAL NOTICE OR BAD FAITH NECESSARY. Under 2 Comp. Laws 1929, § 9305, in order to constitute notice of infirmity in instrument or defect in title of person negotiating same, person to whom it is negotiated must have had actual knowledge of infirmity or defect, or knowledge of such facts as amounted to bad faith.

On power of corporation to act as surety, see annotation in 48 L. R. A. 589.

3. Same—Negotiable Instruments—Indorsement Without Re-
   course.

   That indorsement of note was "without recourse" does not im-
      pair its negotiable character.

4. Same—Right to Act as Surety—Breach of Contract—Holder
   in Due Course.

   Where giving of valid bond was one consideration entering into
      contract for which notes were given, if surety, which pur-
      chased notes, had no right to become surety, then contract
      was breached by its own act prior to time it purchased notes,
      and it was not *bona fide* holder.

5. Corporations—Right to Act as Surety—Ultra Vires Con-
   tracts.

   Corporation has no right to become surety for another unless
      such right is given either expressly or impliedly by its charter.

6. Evidence—Conclusion—Corporations—Right to Act as Surety.

   Letter from secretary of State of Illinois stating that Illinois
      corporation acting as surety on bond had no authority to act
      as such is not proper evidence of said fact, since it is nothing
      more than legal conclusion of said officer.

Appeal from Wayne; Smith (Guy E.), J., presid-
ing. Submitted January 6, 1932. (Docket No. 54,
Calendar No. 35,879.) Decided March 2, 1932. Re-
hearing denied June 6, 1932.

Assumpsit by Lincoln Investment Company, an
Illinois corporation, against Sam Metros, individ-
ually and doing business under assumed name of
Aviation Cafe, on promissory notes. Directed ver-
dict and judgment for defendant. Plaintiff appeals.
Reversed, and new trial granted.

*Lindley & Delaney,* for plaintiff.

*Henry C. L. Forler,* for defendant.

Butzel, J. Plaintiff, Lincoln Investment Com-
pany, of Springfield, Illinois, an Illinois corporation,
claimed to be the holder in due course of five notes

of $75 each given by Sam Metros, defendant, to the Red Arrow Service Company, as payee. Metros was proprietor of the Aviation Cafe, of Dearborn, Michigan. An individual residing in Springfield, Illinois, did business under the assumed name of the Red Arrow Company, and sold a service for stimulating trade to its subscribers. The latter purchased coupons, called "Red Arrow Money," which they gave to their patrons, to use in payment of purchases made at public auctions held at intervals by the subscribers. Metros claimed that it was represented to him by the payee's solicitor that 11 other merchants of Dearborn had subscribed to the system, and that it required at least that number to make the system a success.

A written contract defining the rights and obligations of the parties was executed by Metros and the Red Arrow Service Company, who were respectively designated therein as the "subscriber" and the "company." In accordance with the contract, Metros made a down payment of $113.80, gave notes including the five being sued upon, and obligated himself in other respects, both as to the use of the system and the equipment furnished by the company. Five of the notes were indorsed without recourse to plaintiff before maturity, and a check was given by it to the payee for the full face of the notes discounted. One of the principal obligations of the company in the contract and in consideration of which the notes were given, is as follows:

"Upon acceptance of this service agreement, the company will cause a bond to be issued forthwith in subscriber's favor and affix to same a copy of this agreement which covers the scope of the liability of the bond and becomes a part of it and the company will send bond at once to subscriber's local bank which is First National."

In accordance with this provision, the company furnished a bond as follows:

"Know all men by these presents, that the Red Arrow Service Company, of Springfield, Illinois, as principal, and the Lincoln Investment Company, Inc., of Springfield, Illinois, as surety, are held and firmly bound unto Aviation Cafe, of Dearborn, State of Michigan, as subscriber, in the penal sum of such amount or part thereof as is herein stated, to be paid to the said subscriber, or his successors, or assigns, for which payment to be well and truly made we bind ourselves, each of us, and each of our successors or assigns, by these presents.

"The liability of the Red Arrow Service Company, as principal, and the Lincoln Investment Company, Inc., as surety, is based on a guarantee agreement, copy of which is hereunto attached, given by the Red Arrow Service Company of the subscriber, which is: That if the subscriber installs the selling campaign of the Red Arrow Service Company as set forth in the service agreement signed with the subscriber, copy of which is hereunto attached, the subscriber's business is guaranteed to be increased a certain definite per cent., and if it is found that there is not such an increase, then there will be made a refund to the subscriber by the Red Arrow Service Company on the cost of the selling campaign in the manner and as defined in the guarantee agreement attached, otherwise this obligation to be null and void.

"Dated, at Springfield, Illinois, this 8th day of August, A. D. 1930.

"In witness whereof, the parties hereto have set their hands and seals the day and date above written.

"This bond expires March 5, 1932.

"(Corp. Seal)

"RED ARROW SERVICE COMPANY, (Seal)
"By C. R. DePew.
"LINCOLN INVESTMENT COMPANY, INC.,
"By NOAH GULLETT, Treas. (Seal)"

The bond was attached to a copy of the contract and sent to the First National Bank of Dearborn, Michigan. Defendant claimed he had been defrauded, refused to pay the notes, or have anything further to do with the scheme. Plaintiff thereupon brought this suit, and from a judgment in favor of defendant has appealed to this court.

Plaintiff asserted that it was a *bona fide* purchaser for value before the maturity of the notes, and that there is no showing that it had any knowledge of any infirmity in the notes or fraud or misrepresentation on the part of the payee, or of any defects in his title.

Defendant claims that the Red Arrow Service Company consisted of an individual who was doing business in this State under an assumed or fictitious name, and who had failed to file a certificate and could not bring suit under 2 Comp. Laws 1929, §§ 9825–9829. The failure of a payee to conform with the act to regulate the carrying on of business under an assumed or fictitious name does not prevent a *bona fide* purchaser of such note in due course from recovering thereon. *Pontiac Savings Bank* v. *Reinforced Concrete Pipe Co.,* 178 Mich. 261, 262; *Peoples State Bank* v. *Trombly,* 241 Mich. 199.

Defendant further claims that plaintiff, an Illinois corporation, had not been authorized to do business in the State of Michigan, and, therefore, could not bring suit in this State. The bond appears to have been signed in Springfield, Illinois. There is no showing that plaintiff entered into any other contract in this State. *National Adjusting Ass'n* v. *Dallavo,* 253 Mich. 239.

Defendant further claims that the very fact that the notes were indorsed "without recourse" indicates that plaintiff as transferee must have known of the infirmities. The fact that plaintiff knew the

contents of the Red Arrow Service Company contract does not of itself injure plaintiff's position. Under 2 Comp. Laws 1929, § 9305, in order to constitute a notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts as amounted to bad faith. *Hakes v. Thayer,* 165 Mich. 476, 487; *Whitehead v. Purdy,* 172 Mich. 31; *Poss v. Meader,* 189 Mich. 323; *East Lansing State Bank v. Keil,* 213 Mich. 17. Neither does the fact that the indorsement of the notes was without recourse impair the negotiable character of the instruments. 2 Comp. Laws 1929, § 9287.

Defendant further claims that plaintiff had no right to act as surety on the bond attached to a copy of the contract between Red Arrow Service Company and defendant. The giving of a valid and enforceable bond was one of the main considerations entering into the transaction for which the notes were given, and if plaintiff had no right to become surety, then the contract was breached by its own act prior to the time it purchased the notes. A corporation has not the right to become surety for another except where such right is given either expressly or impliedly by its charter. *Stone-Ordean-Wells Co. v. New England Pie Co.,* 201 Mich. 407; *Best Brewing Co. v. Klassen,* 185 Ill. 37 (57 N. E. 20, 50 L. R. A. 765, 76 Am. St. Rep. 26); *Central Lumber Co. v. Kelter,* 201 Ill. 503 (66 N. E. 543).

In order to prove plaintiff's lack of authority to become surety, the defendant introduced a letter from the secretary of State of Illinois, in which he stated that plaintiff is an Illinois corporation and that this "company has no authority to act as surety for others." The letter simply shows a legal con-

clusion by the secretary of State of Illinois and was not proper evidence of plaintiff's corporate purposes, or its liability to become a surety on bonds of others. For this reason the judgment of the lower court in favor of defendant is reversed, and the case remanded for a new trial, the costs to abide the final outcome of the case.

CLARK, C. J., and McDONALD, POTTER, SHARPE, NORTH, FEAD, and WIEST, JJ., concurred.