THE CENTRAL SAVINGS BANK COMPANY, A CORPORA-
TION, PLAINTIFF, v. BERNICE BARBER AND GEORGE
S. BARBER, DEFENDANTS.

Submitted July 3, 1918—Decided November 11, 1918.

An inchoate right of dower is a valuable, subsisting, separate and
distinct interest, the enlargement of the value of which is a legal
consideration which will support a promissory note by a married
woman even though she signs the note as surety, accommodation
maker or endorser for her husband.

On rule to show cause.

Before GUMMERE, CHIEF JUSTICE, and Justices SWAYZE
and BERGEN.

For the plaintiff, *King & Vogt.*

For the defendant Bernice Barber, *Randolph Perkins.*

The opinion of the court was delivered by

SWAYZE, J. In 1913 the defendant Bernice Barber, and
George S. Barber, her husband, signed a note for $5,000, to
which George's mother also became a party. The Central
Savings Bank Company advanced the amount to George.
When the note came due George's mother paid $2,500, and
the note in suit was discounted to take care of the difference.
Both notes were signed in this state. Mrs. Barber received
no cash. The plaintiff is an Ohio bank; the notes were
delivered in Ohio, and the $5,000 was borrowed for and ap-
plied to the payment of a mortgage on real estate, the title
to which was in Mr. Barber. Mrs. Barber testified that the
amount and date were blank when she signed, and that she
signed at her husband's request. The learned trial judge
told the jury that the signature on the blank paper delivered
by the person making the signature in order that the paper
might be converted into a negotiable instrument, operated as

a *prima facie* authority to fill up such paper for any amount, but it must be filled up strictly in accordance with the authority given within a reasonable time; but if after completion it was negotiated to a holder in due course, it was valid and effectual for all purposes and he might enforce it as if it had been filled up strictly in accordance with the authority given in a reasonable time; and the judge left it to the jury to say whether the bank was a holder in due course. The charge was a mere statement of section 14 of the Negotiable Instruments act, which does not differ from the principle of *Mechanics Bank* v. *Chardavoyne*, 69 *N. J. L.* 256. The court refused to charge that an inchoate estate of dower is a valuable, subsisting and separate and distinct interest, the enlargement of the value of which will support a promise to pay and is a legal consideration for the promise to pay by the defendant Bernice Barber.

There is no suggestion in the case that the filling of the blank for the amount of either the $5,000 note or the $2,500 renewal and the blank for the date in the latter was not in pursuance of Mrs. Barber's authority to her husband. She testifies that Mr. Barber received $5,000, that just previous to its receipt she signed a document like the note in suit, that she thinks the $5,000 must have come as a sequence of signing that document because he paid the mortgage.

The note in suit is a renewal for an unpaid balance of the $5,000 note. If the blank existed when Mrs. Barber signed, it was necessary that it should be filled for $2,500, the amount unpaid on the $5,000 note. There can, of course, be no question that the blank for the date was properly filled. It was the date when the renewal was effected. The question of reasonable time is out of the case. The production and proof of the note by the bank and proof that it was unpaid, made a *prima facie* case and entitled the bank to a verdict unless a defence was established. The defence was that Mrs. Barber had been assured by her husband that she would not be called on to pay the note, and that she signed without consideration and as accommodation maker only. Her husband's assurance is no defence and is not now urged. There remain only the

alleged lack of consideration and the accommodation character of the note. The statute permits the consideration to be inquired into between the original parties, and, since the bank is payee, applies to this case. The trial judge properly permitted such inquiry. The question as to the liability of a married woman was argued in the briefs, chiefly as if it turned on whether the contract was made in Ohio or New Jersey. This was not the decisive question. It was settled, prior to the enlargement by statute of the powers of married women to contract, that where husband and wife unite in giving a note to raise money to pay off a mortgage on lands of the husband, a consideration moves to the wife. "She has," said Chief Justice Beasley, "a valuable, though contingent, interest in the property of her husband, which interest is encumbered by this mortgage, and the money borrowed was to be applied so as in some degree to exonerate such interest. In testing the wife's right to act as a *feme sole,* the only question is whether she is to derive any benefit from the transaction, for if such benefit is to accrue, her right to bind herself is unquestionable." He adds that the court cannot attempt to measure the adequacy of the interest which has induced her action. *Perkins* v. *Elliott,* 23 *N. J. Eq.* 526, 534, 535. The plaintiff's request to charge was a mere affirmation of the rule of Perkins *v.* Elliott. The rule which was applicable to the separate estate of a married woman before the statutory enlargement of her power to contract is applicable under the statute. Under that rule the bank is a holder in due course. A verdict should have been directed for the plaintiff, by reason of the failure of the defendant to meet the *prima facie* case arising out of the production and proof of the note.

The rule must be made absolute.